**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**DELYON HARRIS** **PETITIONER**

**v.** **No. 1:25CV46-GHD-RP**

**LEE COUNTY MUNICIPAL COURT** **RESPONDENT**

# MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of DeLyon Harris for a writ of *habeas corpus* under 28 U.S.C. § 2241. The State has moved [16] to dismiss the petition and has twice supplemented [18], [19] that motion. Harris has not responded, and the deadline to do so has expired. The matter is ripe for resolution. For the reasons set forth below, the State's motion [16], [18], [19] to dismiss will be granted, and the instant petition will be dismissed with prejudice for failure to state a claim upon which relief could be granted – and, in the alternative, without prejudice for failure to exhaust state remedies.

## *Habeas Corpus* Relief Under 28 U.S.C. § 2241

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new habeas corpus procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about habeas corpus.

*Id.*

Relief under § 2241 is available to a prisoner in five situations, when:

(1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or

(2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

(3) He is in custody in violation of the Constitution or laws or treaties of the United States; or

(4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or

(5) It is necessary to bring him into court to testify or for trial.

28 U.S.C. § 2241(c).

Under 28 U.S.C. § 2241, a federal court may issue the writ when the petitioner is in state custody pursuant to something other than a state judgment (such as pretrial detention, pretrial bond order, etc.), permitting a federal court to order the discharge of any person held by a state in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915). Section 2241 also provides a remedy for federal prisoners in two instances, "(1) to challenge the execution of a sentence, and (2) to test the legality of a detention when § 2255 is otherwise inadequate." Section 2241, Federal Habeas Manual § 1:29.

## Facts and Procedural Posture[1]

On April 15, 2025 (with a signature date of April 4, 2025), Harris filed a § 2241 petition challenging his pretrial detention in Lee County for "unlawful[] charge[s]." Doc. 7. Harris initiated federal *habeas corpus* proceedings after he was indicted for possession of a firearm by a felon in February 2025, but before his second indictment for shooting into a dwelling, malicious mischief greater than $5,000, and possession-of-a-firearm by a felon in April 2025. **Exhibit A**; Doc. 15-1 at 4 (State Court Record, Lee County Circuit Court Cause Number CR25-187W, MEC Doc. 1); **Exhibit B**; Doc. 15-2 at 4 (SCR, Lee County Circuit Court Cause Number CR25-394, MEC Doc. 1).[2] Harris requests that "all charges [] be dismissed for violations of his const[itutional] rights." Doc. 7 at 7.

The instant petition is subject to dismissal for multiple reasons. First, Harris' request that the court dismiss his pending Lee County charges does not state a valid claim for *habeas corpus* relief and must be dismissed for that reason. Second, Harris' claims are unexhausted, requiring dismissal of the petition without prejudice. Third, his request for bail is moot, also requiring dismissal of the petition without prejudice. Finally, damages are not available through *habeas corpus*.

## State Court Proceedings Prior to Filing Federal Petition

On February 7, 2025, DeLyon Harris was indicted in Lee County for possession of a firearm by a felon. **Exhibit A**; Doc. 15-1 at 4 (State Court Record, Lee County Circuit Court Cause Number CR25-187W, MEC Doc. 1). Capias was returned as executed on February 14,

---

[1] The court has drawn the facts and procedural posture from the State's motion [16], [18], [19] to dismiss the instant petition for writ of *habeas corpus*, as they are both well-documented and uncontested.

[2] The exhibits reference in the instant memorandum opinion may be found attached to the State's motion to dismiss.

2025. Doc. 15-1 at 7 (State Court Record, Lee County Circuit Court Cause Number CR25-187W, MEC Doc. 3). At Harris' arraignment on March 17, 2025, he was present with his court-appointed counsel, Adam Pinkard, and the court set a $10,000 bond. Doc. 15-1 at 8 (State Court Record, Lee County Circuit Court Cause Number CR25-187W, MEC Doc. 4). Harris pled "not guilty" to possession of a firearm by a felon. Doc. 15-1 at 8 (State Court Record, Lee County Circuit Court Cause Number CR25-187W, MEC Doc. 4).

On April 9, 2025, he was indicted in a separate cause (CR25-394) in Lee County on November 27, 2024, charges for shooting into a dwelling, malicious mischief greater than $5,000, and possession-of-a-firearm by a felon. **Exhibit B**; Doc. 15-2 at 4 (SCR, Lee County Circuit Court Cause Number CR25-394, MEC Doc. 1). Capias was issued that date and returned as executed on April 14, 2025. Doc. 15-2 at 7 (SCR, Lee County Circuit Court Cause Number CR25-394, MEC Doc. 3). On April 28, 2025, Harris pleaded "not guilty" to shooting into a dwelling, malicious mischief greater than $5,000, and possession-of-a-firearm by a felon at his arraignment. Doc. 15-2 at 8 (SCR, Lee County Circuit Court Cause Number CR25-394, MEC Doc. 4). The court set a $20,000 bond. Doc. 15-2 at 8 (SCR, Lee County Circuit Court Cause Number CR25-394, MEC Doc. 4).

On July 23, 2025, Sarah Schnaithman entered an appearance as Harris' counsel in Cause Number CR25-187W. Doc. 15-1 at 12 (State Court Record, Lee County Circuit Court Cause Number CR25-187W, MEC Docs. 7, 8). On August 3, 2025, Schnaithman requested, and the circuit court granted, a continuance in Cause Number CR25-187W due to Harris's "recent arraignment and needing to complete discovery [] [and his] recent retention of private counsel." Doc. 15-1 at 16, 22 (State Court Record, Lee County Circuit Court Cause Number CR25-187W, MEC Docs. 9, 11). On August 6, 2025, Schnaithman was substituted as counsel. Doc. 15-1 at 23 (State Court Record, Lee County Circuit Court Cause Number CR25-187W, MEC Doc. 12);

*see also* Doc. 15-2 at 10 (SCR, Lee County Circuit Court Cause Number CR25-394, MEC Doc. 5). On October 28, 2025, Schnaithman requested to withdraw as Harris's counsel. Doc. 15-1 at 24 (State Court Record, Lee County Circuit Court Cause Number CR25-187W, MEC Doc. 13) *see also* Doc. 15-2 at 11 (SCR, Lee County Circuit Court Cause Number CR25-394, MEC Doc. 6). The same day, the court entered an order setting a hearing for November 5, 2025, on the motion to withdraw. Doc. 15-1 at 26 (State Court Record, Lee County Circuit Court Cause Number CR25-187W, MEC Doc. 14). Harris, who is currently out on bond according to an assistant district attorney for Lee County, was present at the hearing and was given "30 days to fulfill obligations to his Counsel set forth in his engagement contract." Doc. 15-1 at 27 (State Court Record, Lee County Circuit Court Cause Number CR25-187W, MEC Doc. 15). On December 12, 2025, the court allowed Harris's counsel to withdraw because Harris "failed to fulfill [his] obligations" and "the 30 day period has elapsed." Doc. 15-1 at 27 (State Court Record, Lee County Circuit Court Cause Number CR25-187W, MEC Doc. 15). The trial court thus gave Harris 30 days to hire new counsel. Doc. 15-1 at 27 (State Court Record, Lee County Circuit Court Cause Number CR25-187W, MEC Doc. 15).

An assistant district attorney (ADA) for the Lee County District Attorney's Office advised the State's counsel in the present case that Harris had not obtained new counsel – but was set to appear in court on February 12 and February 18. Harris failed to appear on his February court dates, and the court entered a judgment nisi on February 19, 2026. Doc. 17-1 at 15 (SCR, Lee County Circuit Court Cause Number CR25-187W, MEC Doc. 17); Doc. 17-2 at 15 (SCR, Lee County Circuit Court Cause Number CR25-394, MEC Doc. 9). On March 3, 2026, Corbett Bonding surrendered Harris back to the Lee County Jail after he was found incarcerated in the Cumberland County Sheriff's Office in Tennessee. Doc. 17-1 at 5 (SCR, Lee County

Circuit Court Cause Number CR25-187W, MEC Doc. 17); Doc. 17-2 at 5 (SCR, Lee County Circuit Court Cause Number CR25-394, MEC Doc. 9).

On March 4, 2026, the trial court entered an order appointing Harris a public defender. Doc. 17-1 at 18 (SCR, Lee County Circuit Court Cause Number CR25-187W, MEC Doc. 18); Doc. 17-2 at 18 (SCR, Lee County Circuit Court Cause Number CR25-394, MEC Doc. 10). The ADA confirmed to the Respondent that Maria Lui was appointed as Harris's counsel.

**Federal *Habeas Corpus* Proceeding**

On March 27, 2025, after Harris' first indictment and before the second, he initiated federal *habeas corpus* proceedings by filing a request for "appointment of counsel under exceptional circumstances pursuant to 42 U.S.C. § 1983." Doc. 1. Harris argued that he was "wrongfully accused by defendants." Doc. 1. He alleged an equal protection violation by the arresting officer or the municipal court in "fail[ing] to provide him with [] counsel." Doc. 1. He asserted that any statements "stemming from custodial interrogation" when he was "not provided counsel" also violates equal protection. Doc. 1. He further argued that the Lee County Jail "discontinued their law library service" depriving inmates from legal access. Doc. 1. He also asked that all judges abide by the judicial code of conduct. Doc. 1 at 2.

The court ordered Harris to submit his complaint on the proper form and either pay the filing fee or submit the appropriate documents to proceed *in forma pauperis*. Doc. 5. On April 15, 2025, Harris filed his petition on the standard § 2241 form. Doc. 7. In his petition, Harris claims that he was (1) "wrongfully accused," (2) "deprived of counsel" and "denied bail," (3) "racial[ly] profil[ed] or harass[ed]," and (4) "unlawfully [charged] or illegal[ly] searched." Doc. 7 at 8–9.

For relief, Harris seeks "appointment of counsel" and "an order for attorney's fees[.]" Doc. 7 at 9. Harris seeks as relief costs "associated with prosecuting the claims such as

compensatory damages and the same for punitive damages and for all found responsible for violating canons and rules of professional conduct." Doc. 7 at 9. Harris further requests that "all charges to be dismissed for violations of his constitutional rights." Doc. 7 at 9. Lastly, Harris requests that the court grant "relief requested where this Court may discover a clear error of law against him in matters" and that the court "consider the facts that [Harris] is not legally inclined and has a defect in comprehension of legal law, skill [thoroughness], [and ability] to prepare proper litigation and is a poor person unable to hire [] counsel and pay the court cost and security." Doc. 7 at 9.

**State Court Proceedings Taking Place After Harris Filed His *Habeas Corpus* Petition**

In April 2026, Harris filed three *pro se* motions in his criminal case: (1) "motion for reinstatement of previous bond and for a continu[a]nce/new court date"; (2) "motion for dismissal, shooting into dwelling"; and (3) motion for a change of venue. Doc. 17-1 at 20, 27, 31 (SCR, Lee County Circuit Court Cause Number CR25-187W, MEC Docs. 20–22); Doc. 17-2 at 20, 27, 31 (SCR, Lee County Circuit Court Cause Number CR25-394, MEC Docs. 12–14). Harris also filed a *pro se* "Notice for a motion to suppress evidence and inditement." Doc. 17-1 at 35 (SCR, Lee County Circuit Court Cause Number CR25-187W, MEC Doc. 23); Doc. 17-2 at 35 (SCR, Lee County Circuit Court Cause Number CR25-394, MEC Doc. 15). Those motions are still pending, as of the filing of the State's first Supplement [18].

On April 30, 2026, Harris's counsel filed a motion to reinstate bond in the amounts of $10,000 in cause number CR25-187W, and $20,000 in cause number CR25-394KM. Doc. 17-1 at 38 (SCR, Lee County Circuit Court Cause Number CR25-187W, MEC Doc. 24); Doc. 17-2 at 38 (SCR, Lee County Circuit Court Cause Number CR25-394, MEC Doc. 16). The same day, the court set bond and made it returnable on July 27, 2026. Doc. 17-1 at 39 (SCR, Lee County

Circuit Court Cause Number CR25-187W, MEC Doc. 25); Doc. 17-2 at 39 (SCR, Lee County Circuit Court Cause Number CR25-394, MEC Doc. 17). The court also entered an order continuing Harris's case "until the next term of this Court or August 2026" citing the reason as "ongoing investigation and plea negotiations." Doc. 17-1 at 40 (SCR, Lee County Circuit Court Cause Number CR25-187W, MEC Doc. 26); Doc. 17-2 at 40 (SCR, Lee County Circuit Court Cause Number CR25-394, MEC Doc. 18).

The State recently filed a second Supplement [19] to its motion [16] to dismiss, detailing the unfolding of Harris' state criminal proceedings. The trial court entered an order continuing Harris' criminal case in Cause No. CR25-187W "until the next term of this Court or November 2026[.]" *See* **Exhibits 1** (Docket), **2** (Order), attached to the State's second Supplement [19]. The trial court granted the continuance in light of "ongoing investigation and plea negotiations." on March 27, 2025.[3] *See id.*

**The Requested Dismissal of His Pending State Charges Is Not Available Through *Habeas Corpus***

In his petition, Harris seeks "for all charges to be dismissed for violations of his constitutional rights." Doc. 7 at 9. He alleges that he has been "wrongfully accused," "deprived of counsel" and "denied bail," "racial[ly] profil[ed] or harass[ed]," and "unlawfully [charged] or illegal[ly] searched." Doc. 7 at 8–9. However, his request for dismissal of his pending charges does not state a valid claim for federal *habeas corpus* relief, and the instant petition must be dismissed with prejudice for that reason.

Harris, as a pretrial detainee, may pursue federal *habeas corpus* relief under 28 U.S.C. § 2241. He may seek to enforce his right for the State to bring him promptly to trial, but he may

[3] Counsel for the State notes that a continuance order has not yet been entered in Cause No. CR25-394, although the filings in Cause No. CR25-187W have mirrored the filings in Cause No.CR25-394. *See* Docs. 15, 17.

not "seek[] to abort a state proceeding or … disrupt the orderly functioning of state judicial processes by litigating a speedy trial defense to a prosecution prior to trial" – unless he can show that special circumstances warrant such intervention. *See Brown v. Estelle,* 530 F.2d 1280, 1283 (5th Cir. 1976); *Braden v. 30th Judicial Circuit Court of* Kentucky, 410 U.S. 484, 488–89 (1973). The difference lies in "the type of relief sought: an attempt to dismiss an indictment or otherwise prevent a prosecution is generally not permitted, while an attempt to require the state to go to trial is proper. *See Brown*, *supra.*

A petitioner seeking to "enforce the state's obligation to bring him promptly to trial" must meet both the custody requirement of § 2241(c)(3), *and* he must first exhaust his state court remedies. *Dickerson v. State of La.*, 816 F.2d 220, 224–26 (5th Cir. 1987) (citations omitted). Only then may the court consider the merits of his claims. But if a petitioner seeks to "abort a state proceeding or to disrupt the orderly functioning of the state judicial processes," he must also show "special circumstances" to warrant an adjudication on "the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction by a state court." *Braden, supra.*

Harris does not demand a speedy trial; he seeks dismissal of all charges, Doc. 7 at 7; as such, absent special circumstances, his claims are not cognizable in this pretrial federal *habeas corpus* proceeding. *Braden*, 410 U.S. at 493. Permitting Harris to pursue his federal challenge while his state criminal case is ongoing would "short circuit the judicial machinery of the state courts[.]" *Brown*, 530 F.2d at 1283 (citation omitted). Harris may not disrupt "pending state proceedings by an attempt to litigate constitutional defenses prematurely in federal court." *Braden*, 410 U.S. at 493.

In addition, the "*Younger* abstention doctrine calls for federal courts to abstain from interfering with pending state criminal proceedings." *Johnson v. Jones*, No. 3:22-CV-715-TSL-

MTP, 2023 WL 4004188, at *2 (S.D. Miss. May 16, 2023), *report and recommendation adopted*, 2023 WL 4002480 (S.D. Miss. June 14, 2023) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). [4] Abstention is "generally appropriate when (1) there is an on-going state judicial proceeding; (2) the proceeding implicates important state interests; and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Johnson*, 2023 WL 4004188, at *2 (citation omitted).

All three elements are present in this case. There is an ongoing state judicial proceeding, "which include an appeal process, provid[ing] [Harris] an adequate opportunity to raise constitutional challenges." *Id.* Criminal proceedings certainly implicate important state interests. Hence, abstention is appropriate in this case. As discussed below, Harris has identified no "special circumstances" to warrant such interference in the state process, and the court may not adjudicate the merits of Harris's "affirmative defense[s] to a state criminal charge prior to a judgment of conviction by a state court." *Braden*, 410 U.S. at 489.

The Supreme Court has not defined what constitutes special circumstances under *Younger* and *Braden*, and there is a dearth of Fifth Circuit authority on the issue. As such the court has looked to well-reasoned holdings of district courts to guide its decision in this case. *Leachman v. Gonzalez,* No. 4:19-CV-2943, 2020 WL 6152537, at *5 (S.D. Tex. Oct. 20, 2020).

For example, this court has found that "[s]pecial circumstances" are those on which a "federal court cannot await a final ruling by [a] state court[], because the integrity of a federal right is threatened." *McClure v. Washington County*, 4:21-CV-19-DMB-RP, 2022 WL 211252, at *3 (N.D. Miss. Jan. 24, 2022) (citing *Vassar-El v. Orleans Par. Prison*, No. 18-838, 2018 WL

---

[4] It is not clear whether *Braden* has supplanted, or at least supplemented, the holding in *Younger*. However, the holdings have enough in common that the court will discuss both. In any event, as discussed, the outcome is the same under either authority.

4462544, at *2 (E.D. La. Sept. 18, 2018); *Champer v. Florida*, No. 6:14-CV-1966, 2014 WL 7070079, at *2 (M.D. Fla. Dec. 15, 2014) (citing *Younger* for the proposition that "special circumstances" under § 2241 usually require a showing of "immediate and irreparable injury"))).

Our sister court in the Southern District has also identified "special circumstances" warranting federal intervention in a state-court proceeding: (1) "bad faith" or harassment in the state-court proceeding; (2) a challenge to a "patently violative" unconstitutional state statute; or (3) "where extraordinary circumstances threaten irreparable loss that is both great and immediate." *Marcum v. Sollie*, No. 3:23-CV-311-DPJ-ASH, 2024 WL 4133038, at *2 (S.D. Miss. Sept. 10, 2024) (citing *Gates v. Strain,* 885 F.3d 874, 880 (5th Cir. 2018) (a § 1983 action discussing *Younger* abstention and the types of "special circumstances" which may trigger federal court intervention)); *Portis v. Sollie,* No. 3:20-CV-316-TSL-RPM, 2021 WL 908214, at *2–3 (S.D. Miss. Jan. 20, 2021), *report and recommendation adopted as modified,* 2021 WL 899079 (S.D. Miss. Mar. 9, 2021) (discussing the three types of extraordinary circumstances that would warrant federal interference in ongoing state court proceedings "assuming arguendo" that *Braden* did not "supplant[] the initial three-prong inquiry set forth in *Younger*"); *see also McClure*, 2022 WL 211252, at *3 (citing *Vassar-El,* 2018 WL 4462544, at *2) (Three sets of circumstances typically qualify as 'special': (1) there is evidence of state proceedings motivated by bad faith, (2) irreparable injury would occur, or (3) there is no adequate alternative state forum where the constitutional issues can be raised").

When determining whether such special circumstances exist, a federal court must recall that "the state court is 'surely capable of recognizing and vindicating [the petitioner's] position'" and must have the chance to do so. *McClure*, 2022 WL 211252, at *3 (citations omitted). Indeed, the petitioner "bears the burden of showing that an exception applies" and must "affirmatively demonstrate the justification for application of an exception." *Portis,* 2021 WL

908214, at *2–3 (citations omitted); *Johnson,* 2023 WL 4004188, at *3 (it is the petitioner's burden to demonstrate a special circumstance, and conclusory allegations are insufficient to circumvent abstention).

In the present case, Harris has identified no "special circumstance" that would warrant the court's intervention and adjudication of his state pretrial claims. He filed his federal petition for writ of *habeas corpus* after his first indictment in February 2025, but before his second indictment in April 2025 for the charges he challenges in the instant petition. Doc. 7. Contrary to his claim that he was denied counsel, he was represented by a public defender at his arraignment. He then secured private counsel who moved for discovery and a continuance in his case. Later, the court gave Harris 30 days to pay his counsel after she moved to withdraw for non-payment. Harris did not comply; hence, after 30 days, the court permitted counsel's withdrawal – but gave Harris 30 additional days to secure new counsel. Harris is currently out on bond. His criminal proceedings are advancing in state court, and he has not shown bad faith in the conduct of those proceedings.

Nor has Harris affirmatively shown any irreparable injury or lack of an adequate forum to present his claims. His claims in the instant petition raise affirmative defenses that he may present in state court, including through pretrial motions. Indeed, a petitioner may "test the legality of [his] detention prior to conviction" by filing a writ of *habeas corpus* in state court. *Harris v. Patten*, 396 So. 3d 1217, 1220 (Miss. Ct. App. 2024); *see also, e.g., Bateman v. State*, 267 So. 3d 793, 796–97 (Miss. Ct. App. 2018) ("the function of" a *pretrial* writ of *habeas corpus* "in Mississippi in criminal cases is to release a prisoner who is being unlawfully held prior to indictment or to grant [the prisoner] a bail bond which [the prisoner] can make").

Harris may also pursue his constitutional claims arising out of his pending charges through other means, present them to the Mississippi Supreme Court – and thus exhaust his state

remedies that way. *See* Miss. Code Ann. §§ 99-35-101 (providing right to appeal following conviction); 99-39-1, *et seq.* (providing avenues for post-conviction relief); *Hillie v. Webster*, No. 4:17-CV-184-DMB-RP, 2019 WL 1304256, at *4 (N.D. Miss. Jan. 4, 2019), *report and recommendation adopted*, 2019 WL 1301969 (N.D. Miss. Mar. 21, 2019) (detailing potential state avenues for exhaustion of a pretrial speedy-trial claim, identifying "a remedial writ under Miss. Code Ann. § 9-1-19" as a potential *pretrial* remedy, and concluding that petitioner did not seek such a writ in the Mississippi appellate courts – and thus failed to exhaust his available state court remedies).

Harris has thus identified no "special circumstances" to permit this court's intervention, and his petition must be dismissed with prejudice for failure to state a valid claim for federal *habeas corpus* relief. *See Marcum,* 2024 WL 4133038, at *2; *Johnson,* 2023 WL 4004188, at *2; *McClure*, 2022 WL 211252, at *3; *see also, e.g.*, *Houston v. Sollie*, No. 3:17-CV-1031-LG-RHW, 2018 WL 3203604 (S.D. Miss. May 29, 2018), *report and recommendation adopted,* 2018 WL 3188387 (S.D. Miss. June 28, 2018); *Lewis v. Sollie*, No. 3:17-CV-942-DPJ-FKB, Doc. 7 (S.D. Miss. May 2, 2018), *report and recommendation adopted*, Doc. 8 (S.D. Miss. June 6, 2018); *Reed v. Sollie*, No. 3:17-CV-870-LG-LRA, 2018 WL 3203603 (S.D. Miss. Apr. 30, 2018), *report and recommendation adopted,* 2018 WL 3188597 (S.D. Miss. June 28, 2018); *Naylor v. Sollie*, No. 3:16-CV-762-HTW-LRA, 2017 WL 8897110 (S.D. Miss. Aug. 21, 2017), *report and recommendation adopted,* 2018 WL 683712 (S.D. Miss. Feb. 1, 2018).

**Harris' Claim Regarding Denial of Bail Must Be Dismissed Without Prejudice as Moot**

Harris alleges that he was denied bail, and he seeks release on bond. Doc. 7 at 6. However, the relief he seeks is no longer available because has since been released on bond. Thus, his request for relief has been rendered moot. "'Mootness is a jurisdictional question' that

goes to the heart of Article III's case-and-controversy requirement." *Crocker v. Austin*, 2024 WL 426136, at *5 (5th Cir. Sept. 23, 2024) (citing *Abbott v. Biden,* 70 F.4th 817, 824 (5th Cir. 2023)). The issue of whether a case has become moot presents a jurisdictional matter because it implicates the Article III requirement that a live controversy exist at all stages of federal court proceedings. *Bailey v. Southerland*, 821 F.2d 277, 278 (5th Cir. 1987). A moot case "presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issue it presents." *Adair v. Dretke*, 150 F. App'x 329, 331 (5th Cir. 2005) (citation omitted).

A case is moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Herndon v. Upton*, 985 F.3d 443, 446 (5th Cir. 2021) (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307, (2012)). Thus, "[i]f an event occurs that prevents [the Court] from granting 'any effectual relief whatever' to a prevailing party, the controversy is moot, and the [case] must be dismissed." *Salgado v. Federal Bureau of Prisons*, 220 F. App'x 256, 257 (5th Cir. 2007) (citations omitted). Indeed, a previously live case may become moot when an "intervening factual event … causes the [petitioner] to no longer have a present right to be vindicated or a stake or interest in the outcome." *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998) (citations omitted). As Harris is currently out on bond, the court cannot now provide the relief he seeks (release on bond), and his claim regarding denial of bail must be dismissed without prejudice as moot.

**Money Damages Is Not a Form of Relief**
**Available Through *Habeas Corpus***

Harris seeks "an order for attorney's fees needed for investigation fees, litigation, fees, with the cost[s] of court associated with prosecuting the claims such as compensatory damages and the same for punitive damages." Doc. 7 at 9. A writ of *habeas corpus* is the proper forum for a prisoner challenging the fact or duration of his confinement who seeks immediate or

speedier release. *Heck v. Humphrey*, 512 U.S. 477, 481 (1994); *Preiser v. Rodriguez*, 411 U.S. 475, 484, 488–90 (1973). However, "[i]f a favorable determination ... would not automatically entitle [the prisoner] to accelerated release,' the proper vehicle is a § 1983 suit." *Carson v. Johnson*, 112 F.3d 818, 821 (5th Cir. 1997) (internal citation omitted). "Claims for monetary damages must be pursued under 42 U.S.C. § 1983; damages are not available in a federal *habeas* [*corpus*] proceeding." *Preiser v. Rodriguez*, 411 U.S. 475, 484, (1973) (money damages not cognizable through *habeas corpus*). Thus, Harris' request for damages will be dismissed without prejudice.

**Harris Did Not Exhaust His State Remedies Before Filing the Instant *Habeas Corpus* Petition**

There is no express statutory requirement that an inmate seeking *habeas corpus* relief under 28 U.S.C. § 2241 exhaust state court remedies before presenting his claims in federal court. Federal courts have nonetheless read that requirement into the law based on well-established *habeas corpus* authority long preceding the adoption of 28 U.S.C. § 2241. *Dickerson v. Louisiana*, 816 F.2d 220, 225 (5th Cir.), *cert. denied*, 484 U.S. 956 (1987); *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489-90, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *Robinson v. Wade*, 686 F.2d at 303, n. 8 ("Although section 2241 contains no statutory requirement of exhaustion like that found in section 2254(b), exhaustion of state remedies has been held a necessary prelude to its invocation.") In this case, Harris has not exhausted his state remedies because he has not presented his federal *habeas corpus* claims to the Mississippi Supreme Court (or any state court.) As such, in the alternative, the instant petition for writ of *habeas corpus* must be dismissed for failure to exhaust state remedies.

**Conclusion**

For the reasons set forth above, the motion [16], [18], [19] by the State to dismiss the instant petition for writ of *habeas corpus* will be granted – and will be dismissed without prejudice as moot.

Harris' request for damages will also be dismissed without prejudice to his ability to seek such relief under 42 U.S.C. § 1983. Further, in the alternative, the instant petition will be dismissed without prejudice for failure to exhaust state remedies. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 28th day of September, 2026

SENIOR JUDGE